# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| JAIME VELIZ, | Case No. _____ |
| *Plaintiff*, | |
| v. | **COMPLAINT** |
| L. DAHLBERG ENTERPRISES, INC., a Minnesota corporation, d/b/a Wally's Sports & Clothing, | **Injunctive Relief Sought** |
| *Defendant.* | **Jury Trial Demanded** |

Plaintiff, Jaime Veliz, by and through the undersigned counsel, brings this action against Defendant, L. Dahlberg Enterprises, Inc., a Minnesota corporation, doing business as "Wally's Sports & Clothing," for violations of the Americans With Disabilities Act, 42 U.S.C. § 12181, *et seq.* (the "ADA") and its implementing regulations, and alleges as follows:

## INTRODUCTION

1.     Plaintiff is a disabled person. He brings this civil rights action against Defendant for failing to design, construct, and/or own or operate facilities that are fully accessible to, and independently usable by, disabled people. Specifically, Defendant's store, "Wally's Sports & Clothing," located at 218 N. Chestnut St., Chaska, MN 55318, which is a place of public accommodation, has failed to remove barriers preventing or limiting entry and full and equal use of the store facilities to disabled persons, like Plaintiff, notwithstanding that such modifications are readily achievable.

- 1 -

2.     Plaintiff seeks a declaration that Defendant's store violates federal law and an injunction requiring Defendant to make reasonable modifications to its facilities in compliance with ADA requirements so that it is fully accessible to, and independently usable by, disabled individuals. Such reasonable modifications include, but are not limited to, the installation of an entry ramp, installing an accessible entrance door, widening merchandise aisles, and installing accessibility aids in the restroom facilities including a raised seat and grab bars. Plaintiff further requests that, given Defendant's historical failure to comply with the ADA's mandate, the Court retain jurisdiction over this matter for a period to be determined to ensure that Defendant comes into compliance with the relevant requirements of the ADA and to ensure that Defendant has adopted and is following an institutional policy that will, in fact, cause Defendant to remain in compliance with the law.

## JURISDICTION AND VENUE

3.     This is an action for declaratory and injunctive relief, pursuant to Title III of the ADA. This Court is vested with original jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343, and 42 U.S.C. § 12188.

4.     Venue in this judicial district is proper because the Defendant is located and transacts business within this judicial district, and because this is the judicial district in which the acts and omissions giving rise to the claims occurred.

## PARTIES

5.     Plaintiff, Jaime Veliz, is, and at all times relevant hereto was, a resident of the city of Chaska, in the State of Minnesota. Plaintiff is, and all times relevant hereto has been, legally disabled and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 C.F.R. § 36.101 *et seq.*

6.      Mr. Veliz is a naturalized U.S. citizen who was born in Guatemala and contracted polio when he was a young child. He is substantially limited in performing several major life activities, including but not limited to walking and standing. He uses a wheelchair and/or motorized scooter for mobility. As a disabled person, he has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

7.      Defendant, L. Dahlberg Enterprises, Inc., is a Minnesota corporation doing business under the Minnesota business name "Wally's Sports & Clothing," with its principle place of business in the city of Chaska, Minnesota. Defendant is the owner, lessee, lessor, and/or operator of the real property and improvements which are the subject of this action, commonly referred to as "Wally's Sports & Clothing," a place of public accommodation within the meaning of the ADA, located at 218 N. Chestnut St., Chaska, MN 55318 (hereinafter "Wally's"). Wally's is located 0.3 miles from Plaintiff's place of residence.

## FACTUAL BACKGROUND

8.      On or about July 6, 2013, Plaintiff visited Wally's at its Chaska location 0.3 miles from his residence, accompanied by his wife, for purposes of shopping there and browsing the selection of merchandise offered for sale.

9.      Plaintiff attempted to enter Wally's, but the entrance was inaccessible due to the lack of a ramp, a high step, a narrow walkway, and door/hinge placement that prevented him from safely opening the door. Plaintiff verified the absence of an accessible entrance to Wally's. Plaintiff was only able to enter the building with the assistance of his wife.

10.     Once inside Wally's, Plaintiff was unable to fully navigate the store due to the presence of narrow aisles and other spaces that would not accommodate a wheelchair.

11.     While inside Wally's, Plaintiff asked to use the restroom. An employee told Plaintiff that the restroom was not accessible, and offered to help Plaintiff if needed. Indeed, the restroom was difficult and dangerous for Plaintiff to use, due to the small space, the presence of items including toilet paper and paper towels on the floor, the low toilet seat, and the lack of any grab bars.

12.     Wally's is a place of public accommodation. As such, Wally's is required to be in compliance with the ADA and with the ADA's 2004 Accessibility Guidelines, 36 C.F.R. Part 1191, appendices B and D (hereinafter the "ADAAG").

13.     Plaintiff has attempted to, and has to the extent possible, accessed Wally's, but could not do so independently on a full and equal basis because of his disability, due to the physical barriers to access, dangerous conditions and ADA violations that exist at Wally's facilities. As a result of Defendant's non-compliance with the ADA, Plaintiff, unlike persons without disabilities, cannot independently access the facilities and/or enjoy the goods, services, privileges, advantages, and/or accommodations offered therein.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

14.     On July 26, 1990, President George H.W. Bush signed into law the ADA, 42 U.S.C. § 12101, *et seq.*, a comprehensive civil rights law prohibiting discrimination on the basis of disability. In its findings, Congress determined that, among other things:

   a.  Some 43 million Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole grows older;

b.  Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, discrimination against individuals with disabilities continues to be a serious and pervasive social problem;

c.  Discrimination against individuals with disabilities persists in such critical areas as employment, public housing accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

d.  Individuals with disabilities continually encounter various forms of discrimination; and

e.  The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our society is justly famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

42 U.S.C. § 12101(a)(1)–(3), (5), (9).

15.  Congress explicitly stated that the purpose of the ADA was to:

a.  Provide a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities;

b.  Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

c.  Invoke the sweep of congressional authority, including the power to enforce the Fourteenth Amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by individuals with disabilities.

42 U.S.C. § 12101(b)(1), (2), (4).

16.    Title III of the ADA prohibits discrimination in the activities and facilities of places of public accommodation, and requires places of public accommodation to comply with ADA standards and to be readily accessible to, and independently usable by, individuals with disabilities. 42 U.S.C. § 12181–89.

17.    The ADA provided places of public accommodation one and one half years from its enactment to implement its requirements. The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a business had 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 2181; 28 C.F.R. § 36.508(a).

18.    Pursuant to the mandates of 42 U.S.C. § 12134(a), the Department of Justice ("DOJ") promulgated federal regulations to implement the requirements of Title III of the ADA, which are codified at 28 C.F.R. Part 36. Appendix A of the 1991 Title III regulations (republished as Appendix D to 28 C.F.R. Part 36) contains the ADA Standards for Accessible Design, which were based upon the ADA Accessibility Guidelines ("1991 ADAAG") published by the Access Board on the same date. Public accommodations were required to conform to these regulations by January 26, 1992 (or January 26, 1993 if a business had 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181, *et seq.*; 28 C.F.R. § 36.508(a).

19.    In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and construction industries, the building code community, and State and local government entities, as well as individuals with disabilities.

20.    In 1999, based largely upon the report and recommendations of the advisory committee, the Access Board issued a notice of proposed rulemaking to update and revise the 1991 ADAAG.

21.     The Access Board issued final publication of revisions to the 1991 ADAAG on July 3, 2004.

22.     On September 30, 2004, the DOJ issued an advance notice of proposed rulemaking to begin the process of adopting the 2004 ADAAG revisions.

23.     On June 17, 2008, the DOJ published a notice of proposed rulemaking covering Title III of the ADA.

24.     The long process of revising the 1991 ADAAG culminated with the DOJ's issuance of the 2010 Standards for Accessible Design ("2010 Standards"). The 2010 Standards incorporated the revised 2004 ADA Accessibility Guidelines ("ADAAG"), as well as the requirements contained in subpart D of 28 C.F.R. Part 36. The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010. The 2010 Standards became effective on March 15, 2011.

## FACTUAL ALLEGATIONS

25.     Defendant has discriminated against Plaintiff by failing to comply with the requirements of the ADA and the ADAAG. A specific, though not exclusive, list of unlawful physical barriers, dangerous conditions and ADA violations which limit Plaintiff's ability to access the facilities and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, includes the following:

>   a. There is not an accessible entrance to the building in violation of ADAAG 206.4 and 404.

>   b. There is not an accessible route throughout the site and facilities, in violation of ADAAG 206.1, 206.2. Self-service shelving is not located on an accessible route, in violation of ADAAG 225.2.2.

>   c. There are restrooms that are inaccessible, in violation of ADAAG 603. The restrooms lack sufficient clear floor space, maneuvering clearance

and turning area, in violation of ADAAG 603.2 and 304. There are not compliant grab bars in the restroom, in violation of ADAAG 604.5 and 609. The toilet seat height does not comply with ADAAG 604.4.

26.    The above listing is not to be considered all-inclusive of the barriers, dangerous conditions and ADA violations encountered by Plaintiff or which exist at Wally's. In order to fully remedy the discriminatory conditions, Plaintiff requires an inspection of Wally's in order to photograph and measure all of the barriers to access, dangerous conditions, and violations of the ADA and ADAAG.

27.    Compliance with the ADA standards and the ADAAG is readily achievable by Defendant due to the lack of difficulty and low cost of remedying the above-listed barriers. Many, if not all, of the above-listed ADA violations can be remedied through measures that are "readily achievable" by definition under federal regulation, including but not limited to:

    a.  installing ramps;

    b.  repositioning shelves;

    c.  rearranging tables, chairs, vending machines, display racks, or other furniture;

    d.  widening doors;

    e.  installing offset hinges to widen doorways;

    f.  installing grab bars in toilet stalls; and

    g.  installing a raised toilet seat.

28 C.F.R. § 36.304(a).

28.    Compliance is also readily achievable due to the significant assistance available to businesses. Section 44 of the IRS Code allows a Disabled Access tax credit for small businesses with 30 or fewer full-time employees or with total reve-

nues of $1 million or less, which is intended to offset the cost of undertaking barrier removal and alterations to improve accessibility. Section 190 of the IRS Code provides a tax deduction for businesses of all sizes for costs incurred in removing architectural barriers, up to $15,000. *See* ADA Update: A Primer for Small Business, http://www.ada.gov/regs2010/smallbusiness/smallbusprimer2010.htm#tax (Mar. 16, 2011).

29.     As a disabled person, Plaintiff has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

30.     Plaintiff intends to visit Wally's facilities again in the near future, both to ascertain whether they remain in violation of the ADA, and to attempt to shop there on a full, equal, and independent basis. Wally's is located 0.3 miles from Plaintiff's place of residence.

31.     Without injunctive relief, Plaintiff and others like him will continue to be unable to independently access Wally's facilities and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, in violation of their rights under the ADA.

## CAUSE OF ACTION

32.     Plaintiff incorporates and realleges the above paragraphs.

33.     Defendant has discriminated against Plaintiff and others in that it has failed to make its place of public accommodation fully accessible to individuals who are disabled on a full and equal basis in violation of 42 U.S.C. § 12182(a) and the ADAAG, as described above.

34.     Defendant has failed to remove architectural barriers to full and equal access by Plaintiff and other individuals who are disabled, even though compliance would have been readily achievable. Removal of the architectural barriers would

neither fundamentally alter the nature of Defendant's business nor result in an un-due burden to Defendant.

35.    Defendant's violations of the ADA and ADAAG are ongoing. Plaintiff is without adequate remedy at law, has suffered and is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm upon his planned return visit to Wally's, unless and until Defendant is required to remove the physical barriers to access, dangerous conditions and ADA violations that exist at Defendant's place of public accommodation, including those set forth specifically herein.

36.    This Court has authority under 42 U.S.C. § 12188 to grant Plaintiff in-junctive relief, including an order requiring Defendant to make Wally's readily ac-cessible to and independently usable by individuals with disabilities to the extent required by the ADA and ADAAG and/or to close Wally's until such time as Defend-ant cures its violations of the ADA and ADAAG.

37.    Plaintiff has retained the undersigned counsel for the filing and prose-cution of this action, and is entitled to recover reasonable attorneys' fees, litigation expenses and costs from the Defendant, pursuant to 42 U.S.C. §§ 12205, 12117, and 28 C.F.R. § 36.505.

**WHEREFORE**, Plaintiff respectfully requests:

a. That the Court issue a Declaratory Judgment that determines that the Defendant's facilities, at the commencement of the instant suit, are in violation of Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and the rel-evant implementing regulations including the ADAAG.

b. That the Court issue a permanent injunction, pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.504(a), enjoining Defendant from con-

tinuing its discriminatory practices; including an order directing De-
fendant to make all readily achievable alterations to its facilities so as
to remove physical barriers to access and make its facilities fully acces-
sible to and independently usable by individuals with disabilities to
the extent required by the ADA; as well as an order to make reasona-
ble modifications in policies, practices or procedures when such modifi-
cations are necessary to afford all offered goods, services, facilities,
privileges, advantages or accommodations to individuals with disabili-
ties on a full and equal basis.

c.   That the Court award Plaintiff his reasonable attorneys' fees, litigation
expenses, and costs of suit pursuant to 42 U.S.C. § 12205 and 28 C.F.R.
§ 36.505.

d.   That the Court issue such other relief as it deems just and proper,
and/or is allowable under Title III of the ADA.

### DEMAND FOR JURY TRIAL

38.   Plaintiff requests a trial by jury of all issues for which a jury trial is
permitted by law.


DATED:  July 25, 2013

Respectfully submitted,


/s/ Paul R. Hansmeier
Paul R. Hansmeier (MN Bar # 387795)
CLASS JUSTICE PLLC
40 South Seventh Street
Suite 212-313
Minneapolis, MN 55402
E-mail: mail@classjustice.org
Phone: (612) 234-5744